IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRENDA MCDOWELL, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. GLR-17-3200 |
| CHARLES GRIMES, et al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Baltimore Police Department and Former Baltimore Police Commissioner Anthony Batts's (collectively, "BPD")[1] Motion to Dismiss (ECF No. 9). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part the Motion.

## I. BACKGROUND[2]

On August 4, 2014, near the intersection of Patterson Park and Ashland Avenue in Baltimore, Maryland, Defendant Baltimore Police Officer Charles Grimes ("Officer Grimes") and an unidentified female officer were investigating a report of a woman with a gun. (Compl. ¶¶ 15, 17, ECF No. 2). Plaintiff Brenda McDowell's granddaughter was

[1] The Complaint names "Baltimore City Police Department," (Compl., ECF No. 1), but this Defendant uses the name "Baltimore Police Department" in its court filings. Accordingly, the Court will direct the Clerk to amend the docket to "Baltimore Police Department."

[2] Unless otherwise noted, the Court takes the following facts from McDowell's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

playing near the intersection. (See id. ¶ 13). While walking from her porch to retrieve her granddaughter, Officer Grimes "aggressively grab[bed]" McDowell's arm from behind. (Id. ¶ 15). He then called her a racial slur and told her about the report of a woman with a gun in the area. (Id. ¶ 17). Officer Grimes then ordered a female police officer to search McDowell. (Id. ¶ 18). After the search failed to reveal a weapon or other contraband, Officer Grimes began choking McDowell while yelling "give me the gun, give me the gun." (Id. ¶¶ 20–21). McDowell escaped Officer Grimes' chokehold, at which point Officer Grimes pushed her onto a parked car, causing her to lose her balance and fall onto the street. (Id. ¶ 22). McDowell stood up and Officer Grimes choked her again to the point that she lost consciousness and had a seizure. (Id. ¶¶ 24, 27). McDowell sustained bruising to her arm and neck and lost her front tooth. (Id. ¶ 28).

While McDowell was being treated for her injuries in the back of an ambulance, Officer Grimes arrested her. (Id. ¶¶ 31–33). During her arrest, Officer Grimes again called her a racial slur. (Id. ¶ 33). Officer Grimes also told McDowell that he "did not intend to arrest her, but his Sergeant had directed him" to do so. (Id.). McDowell was detained overnight and released on August 5, 2014. (Id. ¶ 35). Officer Grimes later falsified the statement of charges used to charge McDowell with second-degree assault and resisting arrest. (Id. ¶¶ 36–37). In January 2015, the Baltimore City State's Attorney dismissed the charges against McDowell when Officer Grimes failed to show up to McDowell's court proceeding. (Id. ¶ 38).

On August 3, 2017, McDowell sued Officer Grimes, Batts, the Baltimore Police Department, and the Mayor & City Council of Baltimore in the Circuit Court for Baltimore City, Maryland. (Notice Removal ¶ 1, ECF No. 1). On October 30, 2017, Defendants removed the case to this Court. (ECF No. 1).[3]

In her Complaint, McDowell brings ten counts[4] alleging: (1) Battery against Officer Grimes (Count One); (2) Assault against Officer Grimes (Count Two); (3) Gross Negligence against Officer Grimes (Count Three); (4) Negligence against Officer Grimes (Count Four); (5) False Imprisonment against Officer Grimes (Count Five); (6) Intentional Infliction of Emotional Distress against Officer Grimes (Count Six); (7) violations of Articles 16, 19, and 24 of the Maryland Declaration of Rights against Officer Grimes (Count Seven); (8) False Arrest against Officer Grimes (Count Eight); (9) Malicious Prosecution against Officer Grimes (Count Nine); and (10) municipal liability for violations of her constitutional rights under § 1983 against the Baltimore Police Department, Batts, and the Mayor & City Council of Baltimore (Count Ten). (Compl. ¶¶ 43–89). McDowell seeks compensatory and punitive damages and attorney's fees and costs. (See, e.g., id. at 10 ¶¶ (a)–(c)).

[3] On November 7, 2017, the Court dismissed the Mayor & City Council from the case. (ECF No. 14).

[4] The Court notes that the Complaint uses the term "count" for Counts One through Nine but uses the term "claim" for Count Ten. To remain consistent with the Complaint's terminology, the Court refers to the "Tenth Claim" as "Count Ten."

On November 6, 2017, BPD filed a Motion to Dismiss. (ECF No. 9). McDowell filed an Opposition on November 20, 2017. (ECF No. 17). BPD filed a Reply on December 11, 2017. (ECF No. 21).

## II. DISCUSSION

### A. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d

435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B. Analysis**

BPD maintains that McDowell's § 1983 claims against BPD premised on municipal liability fail as a matter of law.

Under Monell v. Department of Social Services, a municipality, such as the Baltimore Police Department, is subject to suit under § 1983. 436 U.S. 658, 690 (1978). A plaintiff may sue a municipality under § 1983 if she suffered a constitutional violation at the hands of an employee acting under color of a municipal policy. Id. at 692. Under Monell, however, "a municipality is liable only for its own illegal acts." Owens v. Balt. City State's Attorney's Office, 767 F.3d 379, 402 (4th Cir. 2014). As a result, "[o]nly if a municipality subscribes to a custom, policy, or practice can it be said to have committed

an independent act, the sine qua non of Monell liability." Id. at 402. Respondeat superior liability does not satisfy the Monell standard. Monell, 436 U.S. at 693–94.

All § 1983 Monell claims have three elements: "(1) identifying the specific 'policy' or 'custom'[;] (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation." Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987), cert. denied sub nom., City of Fayetteville v. Spell, 484 U.S. 1027 (1988); see also Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *12 (D.Md. July 24, 2015) ("[A] municipality is liable when a policy or custom is fairly attributable to the municipality as its own, and is . . . the moving force behind the particular constitutional violation." (citation and internal quotation marks omitted)).

A plaintiff may allege four types of customs, policies, or practices: (1) the "decisions of a government's lawmakers"; (2) "the acts of its policymaking officials"; (3) "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights," known as a "failure to train" claim; and (4) "practices so persistent and widespread as to practically have the force of law," known as a condonation claim. Connick v. Thompson, 563 U.S. 51, 61 (2011).

"Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. To sufficiently state a Monell claim under Rule 12(b)(6), a plaintiff "need only allege facts which, if true, 'state a claim to relief that is plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). The

complaint's facts "need not be particularly detailed, and the chance of success need not be particularly high." Id. "A plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." Id. (quoting Iqbal, 556 U.S. at 678).

Here, McDowell appears to allege that BPD subscribes to the second, third, and fourth types of Monell customs, policies, or practices—unconstitutional acts of policymaking officials, failure to train officers to avoid violating citizens' constitutional rights, and a persistent and widespread practice of constitutional violations. BPD argues that McDowell does not sufficiently assert facts to infer any type of policy or condoned custom existed that caused a violation of McDowell's constitutional rights. The Court first addresses the types of Monell customs, policies, or practices McDowell alleges and then turns to whether they caused the violation she suffered.

**1. Existence of a Custom, Policy, or Practice**

**a. Acts of Policymaking Officials**

BPD contends that McDowell fails to sufficiently allege that acts of BPD officials have created a policy encouraging police officers' violation of citizens' constitutional rights. The Court agrees.

To state a Monell claim based on the acts of policymakers, the plaintiff must allege that official actions of individuals with "final policymaking authority" caused an alleged deprivation of constitutional rights. Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (quoting Monell, 436 U.S. at 694). Only then may the

official actions "fairly be said to represent official policy" of the municipality for the purposes of imposing § 1983 Monell liability. Id. (quoting Monell, 436 U.S. at 694). Further, the acts must be "certain affirmative decisions of individual policymaking officials." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483–84 (1986)).

Here, McDowell's Complaint asserts that Batts "exercises final policymaking authority" for the Baltimore Police Department. (Compl. ¶ 86). McDowell further states that Batts "establishes policies regarding hiring, screening, training, monitoring, supervision and discipline of officers." (Id.). McDowell does not allege, however, any tangible affirmative decision on the part of BPD or Batts that led to the violation of her constitutional rights. The Complaint merely states that BPD "instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage officers to engage in excessive confinement and arrest without probable cause, filing of false charges, and excessive force against citizens." (Id. ¶ 89). McDowell fails to allege facts to support her legal conclusions, which is insufficient to state a § 1983 claim. See Owens, 767 F.3d at 403; see also Barrett v. Bd. of Educ. of Johnston Cty., 590 F.App'x 208, 210 (4th Cir. 2014) (affirming dismissal where the complaint "merely expressed a belief or an opinion without any supporting factual allegations" regarding the municipal policy). Indeed, the bulk of McDowell's allegations relate to BPD's failure to properly train its officers or turning a blind eye to officers disregarding individuals' constitutional

rights. The Court, therefore, concludes that McDowell does not adequately allege acts by BPD officials that constitute a policy of violating citizens' constitutional rights.

Thus, to the extent McDowell brings a Monell claim premised on the acts of BPD's policymaking officials, the Court will dismiss the claim.

**b. Failure to Train**

To state a failure to train claim, the plaintiff must allege facts that reveal: "(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." Jones, 2015 WL 4509871, at *18 (quoting Lewis v. Simms, No. AW-11-CV-2172, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012)).

BPD maintains that McDowell fails to state the first element. The Court agrees.

**i. Nature of the Training**

The nature of the training element "requires more than bald assertions that police officers were not properly trained." Jones, No. 2015 WL 4509871, at *20. It is not sufficient to state "in broad, conclusory terms and in a variety of different ways" that the police department "failed to train and supervise its officers." Peters v. City of Mount Rainier, No. GJH-14-0955, 2014 WL 4855032 at *5 (D.Md. Sept. 29, 2014). Nor is alleging a "general laxness or ineffectiveness" sufficient to state a claim. Shields v. Prince George's Cty., No. GJH-15-1736, 2016 WL 4581327, at *9 n.11 (D.Md. Sept. 1, 2016) (quoting Spell, 824 F.2d at 1390). Instead, a plaintiff must allege a "specific deficiency" with the training. Id.

Here, McDowell does not identify what about the officers' training of was lacking. She merely states that "[BPD] failed to adequately train" its law enforcement officers to not "arrest without probable cause, [file] false charges, and [use] excessive force against citizens." (Compl. ¶ 88). Rather than addressing the specific aspects of a training program, this statement only alleges that the program led to violations of citizens' constitutional rights. Absent any factual detail about the training program, McDowell fails to state a claim. See Hall v. Fabrizio, No. JKB-12-754, 2012 WL 2905293, at *2 (D.Md. July 13, 2012) (dismissing a failure to train claim because the complaint did "not allege any facts regarding the sort of training that Baltimore police officers actually receive"). The Court, therefore, concludes that McDowell fails to sufficiently allege the nature of the training for her failure to train claim.

In sum, McDowell fails to plausibly allege a Monell failure to train claim. Accordingly, the Court will dismiss McDowell's Monell claim to the extent it is premised on BPD's failure to train police officers.

**c. Condonation**

BPD argues that McDowell does not sufficiently allege that BPD condoned a widespread or persistent practice of disregarding citizens' constitutional rights. The Court disagrees.

"Under th[e] [condonation] theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1389). Generally,

bringing a condonation claim requires a plaintiff to prove "a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Id. (quoting Spell, 824 F.2d at 1386–91). Both elements "can be inferred from the 'extent' of employees' misconduct." Id. (quoting Spell, 824 F.2d at 1391). Only "widespread or flagrant" misconduct is sufficient. Id. at 403 (quoting Spell, 824 F.2d at 1387). "Sporadic or isolated" misconduct is not. Id.

Here, the Complaint states that "excessive force, including but not limited to previous unrelated incidents involving Defendant Officer Grimes, was being used with sufficient regularity by Baltimore City police officers." (Compl. ¶ 7). McDowell also alleges that BPD "tolerat[ed], permit[ed], acquiesce[ed] in, and [did] not properly disciplin[e], monitor[ ], or refer[ ] for review or otherwise curb[ ] these known abuses" and Officer Grimes' and other officers' "non-compliance with pre-existing procedures and policies regarding use of force." (Id.). In addition, in her Opposition, McDowell identifies a 2008 court case in the Circuit Court for Baltimore City, Maryland, in which a judgment was entered against Officer Grimes for "assault, battery, false arrest, intentional infliction of emotional distress, and deprivation of rights under Articles 24 and 26 [of the

Maryland Declaration of Rights]."[5] (Pl.'s Mem. Law Supp. Pl.'s Opp'n Defs.' Mot. at 11, ECF No. 17-1).

In Owens, the plaintiff pleaded that "reported and unreported cases" established that BPD had a custom, policy, or practice of "suppressing exculpatory evidence in criminal prosecutions" and that "numerous successful motions" challenging these suppressions demonstrated that the Baltimore State's Attorney's Office knew of the evidence suppression and condoned it. Id. at 402–03. The United States Court of Appeals for the Fourth Circuit held that the cases and motions were factual allegations supporting the plaintiff's condonation claim. Id. at 403. The court further held that the plaintiff's assertion that officials at the Baltimore State's Attorney's Office withheld such evidence on "multiple occasions" could "establish a 'persistent and widespread' pattern of practice." Id.

Following Owens, district courts within the Fourth Circuit have similarly denied motions to dismiss without requiring plaintiffs to plead the existence of multiple past incidents with specificity. E.g., Jones v. Jordan, No. GLR-16-2662, 2017 WL 4122795, at *9 (D.Md. Sept. 18, 2017) (finding allegations including that "over 7,200 pedestrian stops reviewed by the Justice Department, only 271—or 3.7 percent—resulted in officers issuing a criminal citation or arrest," was sufficient to plead that BPD was aware of

[5] McDowell cites Canty v. Grimes, et. al., No. 24-C-08-002150 (Balt.Cir.Ct. June 2, 2009), to support the allegations in her Complaint. As a matter of public record, consistent with allegations in McDowell's Complaint, the Court may consider the state court records in ruling on a 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011) (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

police officers' ongoing constitutional violations); Johnson v. Holmes, 204 F.Supp.3d 880, 892 (W.D.Va. 2016) (finding allegations of "numerous complaints" against a police officer sufficient to infer knowledge and indifference by the police department); Jones, 2015 WL 4509871, at *5, 17 (finding allegations of police brutality "reported in the community, by news media," some of which resulted in "settlements and awards" inferred knowledge and indifference by the police department).

Likewise, in this case, McDowell's assertions of regular occurrences of excessive force are factual allegations that, if true, could establish a "persistent and widespread" pattern of practice of constitutional violations. Owens, 767 F.3d 379 at 402 (quoting Spell, 824 F.2d at 1386). Although the factual allegations in the Complaint are somewhat brief, McDowell alleges enough facts to state that BPD has a custom, policy, or practice of unconstitutional uses of force, the "extent" of which is "widespread or flagrant" enough for a condonation claim. See Owens, 767 F.3d at 403 (quoting Spell, 824 F.2d at 1391, 1387). To prevail on the merits, McDowell will need to do more than allege pervasive practices. At the pleading stage, however, the Court concludes that McDowell alleges sufficient facts to support an inference that BPD had knowledge of, and was deliberately indifferent to, officers' practice of unconstitutional conduct.

In sum, the Court will not dismiss McDowell's Monell claim to the extent it is premised on BPD's condonation of officers' pattern and practice of unconstitutional conduct.[6]

**2. Causation**

Although McDowell has alleged a custom, policy, or practice of unconstitutional uses of force, she must still sufficiently plead a causal connection between the custom and the constitutional injury that she allegedly suffered. Spell, 824 F.2d at 1391. Generally, a "sufficiently close causal link . . . is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." Id. When reviewing the Complaint under Rule 12(b)(6), however, a plaintiff "need not 'plead the multiple incidents of constitutional violations' that may be necessary at later stages" to show causation. J.A. v. Miranda, No. PX-16-3953, 2017 WL 3840026, at *7 (D.Md. Sept. 1, 2017) (quoting Jordan by Jordan v. Jackson, 15 F.3d 333, 339–40 (4th Cir. 1994)). Rather, it is sufficient that a plaintiff allege that the municipality "was aware of ongoing constitutional violations" by the municipality's officers and that the municipality's failure to discipline its officers "allowed" a custom, policy, or practice "of unconstitutional violations to develop." Id. (quoting Garcia v. Montgomery Cty., No. JFM-12-3592, 2013 WL 4539394, at *5 (D.Md. Aug. 23, 2013)).

---

[6] BPD also argues that allegations of a single incident of excessive use of force is insufficient to establish municipal liability under § 1983. As a result, BPD contends, McDowell fails to state a claim based on an isolated incident of excessive force involving Officer Grimes. The Court disagrees with BPD's contention that McDowell's allegations are premised on a single incident of misconduct. For the foregoing reasons, McDowell has sufficiently pleaded a pattern or practice of unconstitutional conduct.

At this stage of the case, McDowell must only allege that BPD was aware of its officers' unconstitutional behavior and that its failure to discipline the offending officers condoned this custom. See Miranda, 2017 WL 3840026, at *7 (quoting Garcia, 2013 WL 4539394, at *5). For the reasons stated above, the Court concludes that McDowell has done so. Thus, the Court will not dismiss McDowell's condonation claim for failure to plausibly allege that BPD's custom, policy, or practice caused her injury.

In sum, the Court will dismiss McDowell's Monell claim to the extent it is premised on the acts of BPD policymakers or a failure to train. The Court will not, however, dismiss McDowell's Monell claim to the extent it is premised on BPD's condonation of officers' unconstitutional conduct. Accordingly, the Court will grant in part and deny in part BPD's Motion. [7]

[7] BPD also asserts that McDowell fails to state a § 1983 supervisory liability claim against Batts in his individual capacity and that BPD has sovereign immunity against any state law claims McDowell purports to bring against them. The Court does not, however, construe the Complaint as bringing a supervisory liability claim against Batts, as Count Ten is labeled "Monell Claim." (Compl. at 17). Likewise, McDowell's state law claims under Counts One through Nine are labeled "Against Defendant Grimes." (Compl. 9–17). Count Ten, by contrast, is labeled "Against Defendant Batts, Defendant Baltimore City Police Department, and Defendant Mayor & City Council of Baltimore City." (Id. at 17). Further, McDowell does not respond to either of these arguments in her Opposition. Thus, to the extent the Complaint may be construed as bringing such claims, McDowell's failure to address BPD's arguments shows that she appears to have abandoned them. Muhammad v. Maryland, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim.").

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Baltimore Police Department and Former Baltimore Police Commissioner Anthony Batts's (ECF No. 9). A separate order follows.

Entered this 7th day of August, 2018

/s/
George L. Russell, III
United States District Judge